**RHONE POULENC, S.A., and Rhone Poulenc Inc., Plaintiffs,**

v.

**The UNITED STATES, Defendant,**

**PQ Corporation, Defendant-Intervenor.**

**Court No. 81–1–00079.**

United States Court of International Trade.

March 29, 1984.

**15.** ITC Remand Record (Confidential), Document 15 at A–45.

Donohue & Donohue, New York City (John M. Peterson, New York City), for plaintiffs.

Mandel & Grunfeld, New York City (Bruce M. Mitchell, Washington, D.C.), for defendant-intervenor.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch and Sheila N. Ziff, Washington, D.C., for defendant.

### Opinion

RESTANI, Judge:

This matter is before the court on plaintiffs' motion to amend their complaint challenging a determination of the United States Department of Commerce (Commerce) of sales at Less Than Fair Value (LTFV) pursuant to 19 U.S.C. § 1673d(a) (1982) of the antidumping laws.[1] The amendment would add a claim that certain items found by Commerce to be general expenses and allowed in part as adjustments to Exporter's Sales Price (ESP) should not be limited as provided in 19 C.F.R. § 353.15(c) (1983).

This matter was commenced by the filing of a summons on January 27, 1981, and a complaint was filed on February 25, 1981. On April 30, 1981 the answer of defendant United States was filed. On October 1, 1982 defendant PQ Corporation ("PQ") was permitted to intervene. Oral argument was heard on plaintiff's Rule 56.1 motion for review on December 15, 1982. On February 17, 1984 the court heard further oral argument, which was scheduled on the court's own initiative.

Shortly before the February 17, 1984 oral argument, the court issued an opinion in *Silver Reed America, Inc. v. United States*, 565 F.Supp. 1047, 7 CIT ——, (1984). In that opinion, the court held that the ESP offset cap found in 19 C.F.R. § 353.15(c) is invalid. At the February 17, 1984 oral argument, plaintiffs raised the ESP offset cap issue for the first time. Within the time set by the court for briefing the issue of the appropriateness of consideration of the new issue, plaintiffs moved to amend their complaint. Defendants oppose the amendment.[2]

The first objection raised by defendants is that the ESP offset cap issue was not raised at the administrative level. There appears to be no dispute on this point. During the administrative proceedings plaintiffs argued that some expenses which were found to be subject to the ESP offset cap were technical services expenses directly related to the sales under consideration and therefore were not subject to any limitation as an adjustment to ESP. 19 C.F.R. § 353.15(a). Commerce found that these expenses were general expenses subject to the capped selling expense adjustment.[3] Plaintiffs did not argue alternatively that if Commerce found that the expenses were not technical expenses directly related to the sales, but instead found the expenses to be general selling expenses, that the offset cap in 19 C.F.R. § 353.15(c) was invalid and should not be applied. In fact, plaintiff appears to have accepted the imposition of the cap.

Normally, administrative exhaustion of remedies is required before a litigant will be allowed to raise a claim via a civil action. *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952). However, in the case of *Hormel v. Helvering*, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941), the Supreme Court stated:

> There may always be exceptional cases or particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result,

---

**1.** The complaint also challenges a determination of the International Trade Commission of the threat of material injury pursuant to 19 U.S.C. § 1673d(b)(1)(A)(ii).

**2.** The defendants' arguments overlap and will be treated together.

**3.** PQ states there is a factual question as to whether the ESP offset cap was actually applied to the items which were claimed as technical services. PQ appears to concede that the cap was applied to some selling expenses.

to consider questions of law which were neither pressed nor passed upon by the court or administrative agency below. In the *Helvering* case the Supreme Court had just issued an opinion which made the previously unraised issue determinative, therefore the court considered the new point of law even absent administrative exhaustion.

This was also the result in *In Re Elmore*, 382 F.2d 125 (D.C.Cir.1967) where the court found that despite failure to raise certain aspects of claims at the administrative level, remand for further proceedings was appropriate. In that case a recent Circuit opinion made it clear that plaintiff had rights which had not been recognized previously. In addition *see McKart v. United States*, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969).

■ It is also generally conceded that plaintiff is not required to perform an act which would be futile at the administrative level. As stated in *United Black Fund, Inc. v. Hampton*, 352 F.Supp. 898, 902 (D.D.C.1972):

> [I]t is well settled that an action should not be dismissed for failure to exhaust administrative remedies when an attempt to gain the desired relief from the agency in question would obviously be a futile act.

The plaintiff in that case was allowed to argue in District Court that Civil Service Commission regulations which, as adminis-

tered, deprived it of fund raising status, constituted an abuse of discretion, even though plaintiff had not raised that issue by applying for fund raising status for the period in question.[4]

Although a party is not always excused from challenging the validity of agency procedures at the agency level, *United States v. L.A. Tucker Truck Lines, Inc., supra,* 344 U.S. at 37, 73 S.Ct. at 69,[5] the facts of this case warrant disregard of strict application of the exhaustion of administrative remedies rule. As in *Great Falls Community T.V. Cable Co. v. FCC,* 416 F.2d 238 (9th Cir.1969), there was recent and thorough debate concerning the issue which is raised for the first time in a judicial proceeding. Furthermore, there is evidence in the record that in the context of this case Commerce considered the controversy concerning the ESP offset cap.[6]

■ In this case it appears that it would have been futile for plaintiffs to argue that the agency should not apply its own regulation.[7] As stated by PQ Corporation, the ESP offset cap had been challenged at the time of proposed amendments to antidumping regulations in 1976 and 1979. Apparently the issue was vigorously debated. Nonetheless the regulation remained in force and was consistently applied by Commerce. It appears to the court that had plaintiffs raised the alternative argument different results would not have materialized in the administrative proceedings.[8]

---

4. The court ultimately concluded that the regulations were valid.

5. In this regard the United States cited *Haynes v. United States,* 418 F.2d 1380 (Ct.Cl.1969), but as in many cases the complaint in *Haynes* concerned the manner of application of a regulation not the invalidity of the regulation. Similarly *Unemployment Compensation Commission of Alaska v. Aragon,* 329 U.S. 143, 67 S.Ct. 245, 91 L.Ed. 136 (1946) and *Tucker Truck Lines, supra,* are not directly on point because they do not involve a claim of invalidity of a recently debated regulation.

6. Memorandum from Donald A. Furtado, Deputy Under Secretary, to Mr. Greenwald, dated November 24, 1980, Subject: Regulation Regarding Adjustments to Home Market Price for Technical Services. ITA Record at 235.

7. This case is distinguishable from *Champagne v. Schlesinger,* 506 F.2d 979 (7th Cir., 1974). There the court remanded the case for a determination as to whether the challenged regulation was mandatory. The court recognized that if the regulation was mandatory, it would have been futile to challenge the regulation administratively, so requiring exhaustion would be inappropriate. The parties appear to agree that 19 C.F.R. § 353.15(c) is mandatory.

8. PQ argues that had plaintiffs raised the ESP offset cap issue, PQ would have argued that technical services were not general selling expenses. The court is convinced that Commerce would have applied the cap in any case. It would have been a useless exercise for Commerce to examine the factual issue which PQ might have raised, in the face of a legally dispositive regulation.

There is no reason to believe that objection to the ESP offset would have served any useful function in this case.

The United States argues that exhaustion of administrative remedies is statutorily mandated. Plaintiff did comply with the statute by challenging the LTFV determination at the administrative level. This case involves failure to raise one legal argument with Commerce, not failure to participate, a statutory prerequisite to suit. 19 U.S.C. § 1516a(a)(2). For this reason *Myers v. Bethelehem Shipbuilding Corp.*, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938), and *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) are distinguishable from the case at hand. Likewise, cases dealing with failure to comply with statutory requirements of filing a protest are inapplicable. *Federal Power Commission v. Colorado Interstate Gas Co.*, 348 U.S. 492, 75 S.Ct. 467, 99 L.Ed. 583 (1955) and *Woelke & Romeo Framing, Inc. v. NLRB*, 456 U.S. 645, 102 S.Ct. 2071, 72 L.Ed.2d 398 (1982) do hold that failure to raise a legal claim at the administrative level can in some circumstances bar judicial review of the claim. But in both cases, statutes expressly barred judicial review of legal claims not raised administratively. In contrast, this court need only require exhaustion of administrative remedies "where appropriate" as long as the statutory requirement of participation in the administrative proceeding is met. 28 U.S.C. § 2637(d) (1982).

The court finds the case of *Nakajima All Co., Ltd. v. United States*, 2 CIT 25 (1981) and similar cases cited by the United States to be distinguishable in that plaintiffs have not sought to add any factual data to the administrative record in this case. Their new claim is a purely legal one. It is within this court's discretion to determine whether the particular manner of failure to exhaust administrative remedies warrants preclusion of consideration of the new issue. The court finds that unlike the *Nakajima* case, there is no prejudice to defendants stemming from failure to raise this issue at the administrative level.

Next we turn to the question of whether plaintiffs should be allowed to amend their complaint at this late time. Since the parties are in agreement that the ESP offset cap was subject to criticism and that plaintiffs knew this, can plaintiffs be excused from not raising this issue in their original complaint?

 It appears to be undisputed (apart from the administrative exhaustion issue) that the court has considerable discretion in a case such as this. Leave to amend a complaint is to be freely granted. *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Furthermore, it has been held that mere delay without a showing of prejudice is not a sufficient reason to deny leave. *Howey v. United States*, 481 F.2d 1187 (9th Cir.1973). Therefore, the court must weigh the prejudice that could result to the various parties if the amendment is allowed or precluded.

 On one hand there is the inconvenience to the parties in allowing another round of briefing. If the amendment resulted in more substantial inconvenience, such as a new trial, as was the case in *Corporacion Sublistatica S.A. v. United States*, 1 CIT 120, 511 F.Supp. 805 (1981), cited by PQ, the court might find that real prejudice to plaintiff exists. However this is a review on the record. On the other hand plaintiffs would be prejudiced by denial of their motion, because their claim will not be heard if this court does not hear it.[9] But unreasonable delay cannot be tolerated (*Ataka America, Inc. v. United States*, 80 Cust.Ct. 132, C.D. 4745, 411 F.Supp. 779 (1978) and *Border Brokerage Co., Inc. v. United States*, 83 Cust.Ct. 97, C.D. 4825, 484 F.Supp. 901 (1979), *aff'd* 68 C.C.P.A.

---

9. PQ asserts that all entries affected by this proceeding are liquidated and that relief is available through the annual review process. The record is not clear as to whether all entries are finally liquidated. Even if they are, denial of the motion will cause plaintiffs' opportunity for relief at the earliest point in time to be lost. This appears to be significant prejudice. For this reason the court denies PQ's request for a suspension of this matter.

35, 646 F.2d 539 (1981)). Therefore, the court is left with the question of whether the issuance of the *Silver Reed* decision is a sufficient justification for allowing a late amendment.

It is true that the ESP offset cap was an issue known to plaintiffs. This is not an "ignorance of the law" case as was the case of *Goss v. Revlon, Inc.*, 548 F.2d 405 (2nd Cir.1976), *cert. denied* 434 U.S. 968, 98 S.Ct. 514, 54 L.Ed.2d 456 (1977), cited by PQ. One can know an issue exists but when that issue is the invalidity of properly promulgated regulations, it is difficult to say a party should have anticipated that a court would overturn the regulation. *Silver Reed* is, of course, not final, but it is the only court decision on the issue of the ESP offset cap. If *Silver Reed* is correct and if plaintiffs' claim is not heard here, plaintiffs would be made to suffer the imposition of an invalid regulation for a period of time. If *Silver Reed* is incorrect, defendants are only minimally harmed by having to brief that issue here.[10] Although a non-final decision of the Court of International Trade is not a Supreme Court decision, as was present in *Hormel v. Helvering, supra,* 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037, or even a Court of Appeals decision as was the case in *Elmore supra,* it is nonetheless valuable, though non-binding, precedent unless and until it is reversed. *Rettinger Raincoat Mfg. Co. v. United States,* 57 C.C.P.A. 119, 427 F.2d 1258 (1970); *Bar Zel Expediters, Inc. v. United States,* 3 CIT 84, 90, 544 F.Supp. 868 (1982), *aff'd* 698 F.2d 1210 (Fed.Cir. 1983); *Bethea v. Mason,* 384 F.Supp. 1274 (D.Md.1974), *aff'd* 529 F.2d 514 (4th Cir. 1975), *rev'd on other grounds* 432 U.S. 416, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977); *Buna v. Pacific Far East Line, Inc.,* 441 F.Supp. 1360 (N.D.Cal.1977).

Because the prejudice to defendants is outweighed by the court's concern regarding the imposition of a possibly invalid regulation and the harm this may cause to plaintiffs, the complaint may be amended and the court will consider the question of the validity of 19 C.F.R. § 353.15(c). A procedural order is issued separately.

---

**10.** As to defendant United States that harm is even further reduced because it will be required to brief the same issue on appeal of the *Silver Reed* case.